ORDER
SAYRE, JUDGE:
This claim came on for a hearing on June 26, 2008, before Judge Robert Sayre to consider the Motion of the Claimant, Dorothy Copley (“Mrs. Copley”), that the Court reconsider the March 15, 2007, ruling of Judge Franklin Gritt, who denied the claim of Mrs. Copley for benefits from the West Virginia Crime Victims Compensation Fund (“the Fund”) by reason of the death of her daughter, Tatasha Copley (“Tatasha”), in an automobile accident which occurred on March 27, 2006, in McDowell County, West Virginia.
Although Mrs. Copley herself paid the costs of her daughter’s funeral expenses, these expenses were recovered by her out of the proceeds of liability insurance policies carried on the two automobiles involved in this tragic incident. Mrs. Copley makes no claim that she, herself, was a dependent of her daughter. Thus, no claim has been made by Mrs. Copley on her own behalf. Rather, Mrs. Copley is making this claim on behalf of her granddaughter, Brittany Shantal Copley (“Brittany”), Tatasha’s natural daughter. Brittany, who was ten years old at the time of the incident, has made her home with the claimant since before her mother’s death. It is not clear from the record if the claimant is the duly qualified legal guardian of her granddaughter, but because of a wrongful death action hereinafter mentioned, the Court assumes that she is.
Appearing at the hearing was the claimant, in person and by her attorney, Lisa R. Colosi, and the West Virginia Crime Victims Fund by Ronald R. Brown, Assistant Attorney General. Also present was Brittany, who, however, took no part in the proceeding. Mrs. Copley testified extensively in support of the claim. Her testimony will be considered later in this opinion.
Called as a witness on behalf of the claimant was Sergeant Gregory James Cook *349 of the West Virginia State Police. The Fund concedes that Sergeant Cook is qualified as an expert in accident reconstruction. Sergeant Cook was asked to assist the officer investigating the accident, Trooper J.S. Syner, in determining the sequence of events culminating in the accident. Sergeant Cook visited the scene on March 28, 2006, with Trooper Syner. From his testimony we learn that the accident occurred on March 27, 2006, on County Route 17, a narrow, curvy, two-lane, paved road. The posted speed limit was thirty-five miles per hour. The victim was a passenger in the right front seat of the vehicle being operated by one Torrey R. Hairston. They were traveling south on Route 17 when Mr. Hairston lost control of his vehicle, and it ran off the right edge of the roadway surface. Then, Mr. Hairston over-corrected the vehicle in reentering the roadway, and it came to rest crossways in the northbound lane, with the passenger side facing south. Sergeant Cook opined that the Hairston vehicle had come to a full stop. He believed its emergency lights were on.
Coming in the opposite direction, heading north on Route 17, was the second vehicle, driven by one Charley Auliye (“Mr. Auliye”). When Mr. Auliye saw that the Hairston vehicle was blocking the northbound lane, he applied his brakes. His vehicle laid down about fifty feet of skid marks before slamming into the passenger side of the Hairston vehicle, killing the victim, Tatasha. From the skid marks and the extensive damage done by the force of the impact, Sergeant Cook was of the opinion that Mr. Auliye was, when he applied his brakes, traveling at between sixty and sixty-five miles per hour.
The threshold issue in any Crime Victims Fund claim is whether there was “criminally injurious conduct” as defined in W.Va. Code § 14-2A-3(c). That section provides, in part, that criminally injurious conduct does not include conduct arising out of the use of a motor vehicle, except when the person engaging in the conduct committed negligent homicide, driving under the influence of alcohol, controlled substances or drugs, reckless driving, or when the person leaves the scene of the accident. Id.
The Fund concedes that Mr. Hairston was, within that definition, guilty of criminally injurious conduct. In fact, he pled guilty to and was sentenced for DUI Contributing Cause to Fatality. He is to serve no less than one year nor more than ten years for this conviction.
The claimant, however, argues that Mr. Auliye was also guilty of criminally injurious conduct. This presents a much closer question. There is no evidence that Mr. Auliye was guilty of anything other than driving on a narrow and curvy State road, posted for thirty-five miles per hour, at sixty to sixty-five miles per hour during the hours of darkness. The claimant argues that such a speed on such a road after dark constitutes “reckless driving.” This Court does not believe that moderately exceeding the speed limit, driving to the left of the center line and similar minor infractions of the traffic law of this State are “reckless driving” within the intention of W.Va. Code § 14-2A-3(c). If they were, the legislature would not have excluded “conduct arising out of the use of a motor vehicle.” Id. We conclude that each case must be looked at on its own merits. With this said, this Court must conclude that there has to be a speed over the posted speed limit which by its very nature poses a substantial risk of personal injury or death. The Court concludes that, on the facts of this case, traveling at sixty to sixty-five miles per hour in the dark on a narrow, curvy road posted for thirty-five miles per hour imposed a substantial risk of personal injury or death, and that Mr. Auliye was thus also guilty of reckless driving.
*350 Considering the facts of this particular case, we find that while Mr. Auliye, in driving as just described, was guilty of reckless driving and thus met the definition of criminally injurious conduct as contemplated by W.Va. Code § 14-2A-3(c), the proximate cause of Tatasha’s death was the criminally injurious conduct of Mr. Hairston and Mr. Auliye’s conduct only its remote cause. Lilly v. Taylor, 151 W.Va. 730, 748, 155 S.E.2d 579, 589 (1967).
Further, it is unclear to the Court whether Tatasha’s death would not have occurred had Mr. Auliye been approáching at a speed only slightly in excess of the posted speed limit. We thus find that Mr. Auliye’s conduct can not be the basis of an award in this claim.
The purpose for which the Fund was created was to provide partial compensation to innocent victims of crime for the injury to their person. W.Va. Code § 14-2A-2. Voluntary intoxication of a victim cannot be “contributory misconduct” if the victim is fatally injured. The Court must look to the totality of the circumstances of the case to determine if, in fact, Tatasha was the innocent victim of the criminally injurious conduct of her driver, Mr. Hairston. This is the ground upon which this claim was denied by Judge Gritt.
The evidence contained in the record of this case includes the fact that the victim had a longstanding relationship with Mr. Hairston. He is Brittany’s father. He sold drugs and was an informant for the authorities. He had no driver’s license and had been indicted for DUI. Shortly prior to the accident, he had been stopped by a policeman, but not arrested. All of the foregoing raise the question of whether or not Tatasha was an innocent victim. Put another way, should she have been at the time of the fatal accident, in a car driven by Mr. Hairston? The claimant argues that none of Mr. Hariston’s imperfections mattered, that the fatal accident would not have happened had Mr. Auliye not been speeding. The problem with that is that the victim’s association with Mr. Hairston that night placed her in the position of extreme peril, stopped on a public highway in a car turned sideways with only a car door between her and oncoming traffic.
The claimant testified that Mr. Hairston’s control of the victim was such that Tatasha had to do what he wanted. Does that make her innocent? The Court thinks not. One has to be responsible for one’s own actions. Accordingly, the Court denies the Motion for Reconsideration. Clearly Tatasha was not an innocent victim.
But there is a further ground for denial of this claim. The Court does not believe that the victim’s daughter, Brittany, was Tatasha’s dependent within the meaning of W.Va. Code § 14-2A-3(d). “Dependent” means an individual who received over half of his or her support from the victim. Id. At the time of the accident, Tatasha and Brittany were both living in a home owned by the claimant who also provided the family car. The claimant argues that the victim had received a student loan (the victim was taking classes at “Valley College”) and some of this money went to support Brittany. The intent of this benefit was to further the victim’s education costs, and the amount that this support went to support Brittany is unclear. In addition, Brittany’s medical and dental care were paid for by Medicaid. The victim was receiving child support from Mr. Hairston for Brittany and had no other income. Thus, the Court concludes that the claimant has failed to show that Brittany received more than half of her support from the victim.
Finally, at the hearing, it developed that the insurance on the two cars involved in this accident, in order to settle the claims for the victim’s death, had paid a substantial *351 amount of money for Brittany’s benefit. The claimant argues that none of the money may be taken into consideration because the circuit judge in approving the settlement, had placed the money in trust (with the claimant as trustee) and that none of the money is available until Brittany reaches her majority. Be that as it may, Brittany’s living and transportation arrangements currently are the same as before her mother’s death, and Mrs. Copley is currently receiving a monthly check from public funds for Brittany.
Not considered by the Court was the Fund’s argument that any award from the Fund could unjustly benefit Brittany’s father, who is one of the offenders, Torrey Flairston. Mr. Hairston is currently incarcerated and whether his future child support obligation would be affected by an award from the Fund is, at the best, problematic.
The Court is constrained by the evidence to stand by its previous ruling; therefore, this claim must be, and the same is, denied.